IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YVONNE DERRILL EWANS, CAMILLE LEWIS, Individually, and as next friend of LAURIE SATCHEL, SARAVANAN RATHINASABAPATHY, and NITHYA SARAVANAN, | § § § § § § | CIVIL ACTION NO. 3:08-CV-1395-M |
| Plaintiffs, | § § | |
| v. | § § | |
| WELLS FARGO BANK, N.A., | § § | |
| Defendant. | § § | |

## ORDER

Before the Court is the Motion for Summary Judgment [Docket Entry #24], filed by Wells Fargo Bank, N.A. ("Wells Fargo"). The Motion is GRANTED.[1]

*Background*

Plaintiffs Yvonne Derrill Ewans ("Mr. Ewans"), Camille Lewis, individually and as next friend of Laurie Satchel, Saravanan Rathinasabapathy ("Mr. Rathinasabapathy"), and Nithya Saravanan brought this suit because of an incident at a Wells Fargo branch in Frisco, Texas in September, 2007. According to Plaintiffs' Original Petition, Plaintiffs Mr. Ewans and Mr. Rathinasabapathy entered the branch so that Mr. Rathinasabapathy could obtain a loan to buy Mr. Ewans' car. The two men discussed the terms of the loan with Matthew Palmer ("Palmer"), a Wells Fargo personal banker, who they had previously arranged to meet. Chris Maiwald

---

[1] Plaintiffs also filed a Motion to Strike [Docket Entry #26] certain portions of Defendant's summary judgment evidence. This Motion is denied as moot because the material to which objection was made was not considered by the Court.

("Maiwald"), another Wells Fargo personal banker, was aware that Mr. Ewans and Mr. Rathinasabapathy were at the bank to complete a loan.

At the bank, Mr. Ewans and Mr. Rathinasabapathy made a few phone calls, requesting information to complete the loan paperwork.  Mr. Rathinasabapathy's wife, Plaintiff Nithya Saravanan, joined them approximately thirty-five minutes after they arrived, to deliver Mr. Rathinasabapathy's pay stub.

Plaintiffs allege that another Wells Fargo personal banker, Cindy Pirrello ("Pirrello") became suspicious of Plaintiffs and pressed the silent alarm button to alert Wells Fargo security of a possible robbery in progress.  Pirrello told Kathy Deaver, with Wells Fargo's Central Monitoring System, that "we have a possibility that [a bank customer] has a gun on his hip."[2]  Based on this information, Deaver called 911.  The 911 operator called the bank.  Pirrello told the operator that there was a possibility a bank customer had a gun in his pocket.  Pirrello passed the phone to Maiwald, who told the operator that there was not a robbery in progress and it did not look like the customer had a weapon.  Maiwald requested a plain-clothes officer or a drive by; however, Maiwald was told those options were not available, and then stated to the operator, "send a police officer if you want to to come in and have a presence here, that might deter anything."[3]

Frisco police officers arrived at the bank, allegedly with assault rifles drawn, and forcibly arrested the Plaintiffs.[4]  Plaintiffs claim physical and mental injuries as a result of Wells Fargo's actions.

---

[2] Pls.' App. at 427.  The Court did not refer to Defendant's transcript for this call.  The Court relied only on the call transcript provided by Plaintiffs that is certified by a court reporter.  Pls.' App. at 426-30.
[3] *Id.* at 415.  The Court did not refer to Defendant's transcript for the 911 call.  The Court relied only on the call transcript provided by the Plaintiffs that is certified by a court reporter. Pls.' App. at 410-18.
[4] Plaintiffs Mr. Rathinasabapathy, Mr. Ewans, and Ms. Saravanan were in the bank at the time of the arrest.  Plaintiff Ms. Lewis and her daughter, Laurie Satchel, were in the car waiting outside of the bank at the time of the arrest.

Plaintiffs brought suit in the 192nd Judicial District of Dallas County, Texas on July 10, 2008, asserting claims against Wells Fargo for false imprisonment, negligence, gross negligence, assault, defamation, invasion of privacy, and intentional infliction of emotional distress. On August 11, 2008, Wells Fargo removed the case to this Court, on diversity grounds. On April 24, 2009, Defendant moved for summary judgment [Docket Entry #24]. That Motion has been fully briefed.

*Summary Judgment Standard*

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[5] "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[6] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.[7]

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact.[8] In determining whether genuine issues of material fact exist, factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists.[9] A district court properly grants summary judgment if, when viewing the facts in the light most favorable to the nonmovant, the movant shows that there is no genuine issue of material fact and

---

[5] *See* Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[6] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25).
[7] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[9] *Lynch Props.*, 140 F.3d at 625; *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

that the movant is entitled to a judgment as a matter of law.[10]

*Discussion*

**A. False Imprisonment**

A cause of action for false imprisonment consists of three elements: (1) the defendant willfully detained the plaintiff, (2) the detention was without the plaintiff's consent, and (3) the defendant did not have the authority of law to detain the plaintiff.[11] The first element of false imprisonment is what is at issue here. This element may be satisfied by "conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention."[12] Case law labels this the "instigation of false imprisonment."[13] To prove such instigation, a plaintiff must prove that the defendant directed or requested the detention.[14]

Citizens have a legal right to report criminal activity to the appropriate authorities; therefore, a private citizen who reports a crime or identifies a suspect to authorities is not considered to have instigated the resulting detention.[15] "[E]ven when the reporting party mistakenly identifies the wrong person," as long as the ultimate decision to arrest is left to the police, the reporting party will not be liable;[16] however, if a private citizen *knowingly* provides *false* information which leads to an arrest, the private citizen may be liable for instigating the arrest and thus, liable for false imprisonment.[17]

---

[10] Fed. R. Civ. P. 56(c).
[11] *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).
[12] *Rodriguez*, 92 S.W.3d at 507.
[13] *Id.* (internal citations omitted).
[14] *Id.*
[15] *Id.*
[16] *Dangerfield v. Ormsby*, 264 S.W.3d 904, 910 (Tex. App.—Fort Worth 2008, no pet. h.).
[17] *Rodriguez*, 92 S.W.3d at 509. The court also stated that "we decline to hold that negligently providing inaccurate or incomplete information to legal authorities will make a reporting party liable for false imprisonment." *Id.* at 511.

Wells Fargo contends that it was merely exercising its legal right to report criminal conduct. Additionally, Wells Fargo argues that because its employees requested a plain-clothes officer or merely a police presence, they did not instigate Plaintiffs' detention. Wells Fargo asserts that its employees clearly expressed their uncertainty to police as to whether or not Ewans had a gun, so Wells Fargo employees did not provide law enforcement with false information. Plaintiffs contend that because Wells Fargo did not report an actual crime, if the Court were to grant summary judgment, it would be changing the law and extending current precedent to preclude liability for those who report criminal activity they think is imminent, but where no crime has yet occurred. Plaintiffs contend, apparently justifiably, that no actual crime ever occurred, and Wells Fargo employees provided false information to the police. Plaintiffs also assert that, if the Frisco Police had conducted its own investigation, it would be clear that no crime had occurred; however, Frisco Police relied exclusively on Wells Fargo's assertions, so it was Wells Fargo which directed the arrest. Wells Fargo argues that it is irrelevant whether an actual crime was committed, and urges that no case holds that where police rely exclusively on information provided by a third party, the third party is effectively directing a resulting arrest.

In *Baggett v. Nat'l Bank & Trust Co.*, the plaintiff entered the defendant bank to deposit one portion, and cash another portion, of his paycheck.[18] Plaintiff was unaware that someone had written, "This is a stek [sic] up" on the reverse side of the deposit slip he used.[19] After receiving the deposit slip, a bank representative contacted the police.[20] Summary judgment was granted to the bank on the false imprisonment claim, and that decision was upheld on appeal.[21]

---

Therefore, it is important to determine, if any information provided was false, whether it was provided negligently or knowingly.
[18] *Baggett v. Nat'l Bank & Trust Co.*, 330 S.E.2d 108, 109 (Ga. Ct. App. 1985).
[19] *Id.*
[20] *Id.*
[21] *Id.* at 110.

The appellate court held that the bank merely relayed information to an official, and was not liable for the resulting arrest,[22] contrasting the facts with a situation where the defendant's "persuasion was the determining factor in inducing the officer's decision."[23]

On the 911 call, Pirrello told the operator that there was a "possibility of a gun in [Mr. Ewans'] pocket."[24] Maiwald then joined the call. When he was told that the dispatcher was sending police for a robbery in progress, Maiwald replied, "you might want to stop that. It's not a robbery in progress."[25] Additionally, Maiwald told the operator, "I looked at [Mr. Ewans] and it didn't look like he had a weapon on him because he did pull up his shirt a little bit and I couldn't see [a gun] in his pocket."[26] At the conclusion of the call, Maiwald told the police to, "send a police officer if you want to to come in and have a presence here, that might deter anything."[27] Maiwald did not provide false information to the police. He informed the operator that there was not a gun on the customer and there was not a robbery in progress. Additionally, Maiwald told the operator that if she wanted, she could send in a police officer to have a presence at the bank. It is clear that Wells Fargo employees merely relayed information to the police and left the decision of whether to detain the Plaintiffs to the police. There is no evidence that Wells Fargo instigated the arrest of any of the Plaintiffs. There are no genuine issues of material fact and summary judgment will be granted.

**B. Negligence**

    1. *Vicarious Liability*

A cause of action for negligence includes three elements: (1) a legal duty to another, (2)

---

[22] *Id.* at 109.
[23] *Id.* at 110.
[24] Pls.' App. at 414.
[25] *Id.* at 415.
[26] *Id.*
[27] *Id.*

a breach of that duty, and (3) damages proximately caused by the breach of that duty.[28]

An owner of land may be held liable for negligence under a premises liability theory for two sources of injury: "(1) those arising from a premises defect and (2) those arising from an activity or instrumentality."[29] Plaintiffs' claim is the latter. Plaintiffs assert that the harm suffered was a result of a negligent *activity* on the premises; namely, that Pirrello's suspicions were unreasonable and that calling the police was a negligent act. Wells Fargo, as an owner and occupier of land, owed a duty of reasonable care to Plaintiffs as invitees. Plaintiffs argue that this duty was breached when Wells Fargo called the police based on unreasonable suspicions. However, Wells Fargo's expert testimony, from Dennis R. Dalton, was as follows:

> Based upon my experience, I do not know of a major financial institution that prohibits branch personnel from activating an alarm if they feel threatened. . . . Branch personnel are encouraged, as a matter of industry best practice, to initiate a silent alarm if they believe they are, or anyone else, is in danger. The prevailing philosophy among bank security professionals and financial institution executives is that it is better to err on the side of caution when a suspicious circumstance is present than risk injury or death to customers, staff, visitors, guests, or vendors.[30]

Pirrello had the right to contact law enforcement if she felt threatened. There is no evidence that she was motivated by anything other than that feeling of threat. Pirrello's actions were within the bounds of industry best practice. Therefore, the justification for Pirrello's suspicions is not relevant. She was entitled, and in fact encouraged, to call the police because she felt a possibility of risk to herself and customers. Summary judgment will be granted on this claim.

---

[28] *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).
[29] *Sibai v. Wal-Mart Stores, Inc.*, 986 S.W.2d 702, 706 (Tex. App.—Dallas 1999, no pet.).
[30] Def.'s App. to Reply at 0020-21. Plaintiffs also offered testimony from an expert witness, but their expert offers his opinion that Wells Fargo employees were not properly trained to identify bank robbers, so Wells Fargo does not conform to industry standards. Pls.' App. at 402-04. Plaintiffs do not counter the argument that the industry standard is to call the police when a bank employee feels threatened.

7

### 2. *Negligent Hiring*

A negligent hiring claim "requires that the employer's failure to investigate, screen, or supervise its employees proximately cause[d] the injuries the plaintiff alleges."[31] In order for an employer to be liable under a negligent hiring claim, there must be something in the employee's background that would "cause a reasonable employer not to hire or retain the employee."[32]

Plaintiffs note that the branch manager, Mai Vo, testified that she would not have hired Pirrello because Pirrello "overreacts to certain things," is a "very sensitive person, very emotional, [and] hard to do business with."[33] Plaintiffs note that Pirrello's employment at Wells Fargo was her first banking job. Plaintiffs argue that these facts create a genuine issue of material fact as to whether or not Wells Fargo was negligent in hiring Pirrello. However, Plaintiffs have not pointed to anything that would cause a reasonable employer not to hire Pirrello because she might make wrong decisions about when to call the police about a perceived threat.[34] Plaintiffs do not even point to so much as a reprimand in Pirrello's record.[35] Further, since the Court concludes negligence did not occur, the hiring of Pirrello did not cause any improper conduct. Wells Fargo's motion for summary judgment as to Plaintiffs' negligent hiring claim will be granted.

---

[31] *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet. h.) (*citing Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 796 (Tex. 2006)).
[32] *Id.*
[33] Pls.' App. at 207; Pls.' Resp. at 18. Mai Vo also stated that she did not know who hired Pirrello. Pls.' App. at 207.
[34] Although Mai Vo indicated that Pirrello overreacted to certain things, Mai Vo did not provide an example of a time where Pirrello overreacted in the past. Mai Vo's statement is a conclusory allegation that is not substantiated by Plaintiffs' evidence.
[35] Plaintiffs argue only that Pirrello, not other Wells Fargo employees, was incompetent and unfit for employment at Wells Fargo. Pls.' Resp. at 19.

### 3. *Negligent Training*

Plaintiffs' Response addresses only its ordinary negligence and negligent hiring claims.[36] Plaintiff has not identified sufficient evidence as to the negligent training claim to raise a genuine issue of material fact in response to Defendant's evidence. Therefore, summary judgment should be granted for Wells Fargo as to the negligent training claim.

## C. Gross Negligence

Since the Court grants summary judgment for the Defendant on all negligence claims, it follows that gross negligence cannot survive.[37]

## D. Assault

To sustain a claim for an assault, a plaintiff must show that the defendant either (1) intentionally, knowingly, or recklessly caused bodily injury to the plaintiff; (2) intentionally or knowingly threatened the plaintiff with imminent bodily injury; or (3) intentionally or knowingly caused physical contact with the plaintiff when the defendant knew or should have reasonably believed that the plaintiff would regard the contact as offensive or provocative.[38] "[A]nyone who commands, directs, advises, encourages, procures, controls, aids, or abets a wrongful act by another, is regarded by the law as being just as responsible for the wrongful act as the one who actually committed it."[39] However, even under these circumstances, a defendant must commit

---

[36] *See* Pls.' Resp. at 16-19. In the arguments section of their Response, Plaintiffs do not address the negligent training claim. However, in the facts portion of the Response, Plaintiffs cite to evidence in the record regarding the various training on security issues that the employees attended prior to the incident. *See* Pls.' Resp. at 13. Wells Fargo argues that this claim is a "repackaged negligence claim[ ]" and "[f]or the same reasons discussed above, these claims, too, fail as a matter of law." Def.'s Br. at 12. It fails for the same reason the other negligence claims fail.

[37] *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth, 1996, writ denied) ("A plaintiff who cannot support a negligence cause of action cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence.").

[38] *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[39] *Milliken v. Skepnek*, No. 01-01-00372-CV, 2003 WL 361052, at *7 (Tex. App.—Houston [1st Dist.] Feb. 20, 2003, no pet.) (mem. op.) (*quoting Stein v. Meachum,* 748 S.W.2d 516, 518-19 (Tex. App.—Dallas 1988, no writ)).

some overt act or encourage the actor in some way, to be liable for an assault.[40]

In *Lewis v. Continental Airlines, Inc.*, the plaintiff allegedly made a comment to a Continental Airlines employee, Tisdale, about a potential bomb.[41] Tisdale called the Houston police, and they took the plaintiff to an interrogation room, handcuffed him, and then incarcerated him.[42] Tisdale's only actions were notifying the police about the situation and indentifying the plaintiff to the police when they arrived at the scene.[43] The district court granted summary judgment in favor of the defendants because the plaintiff did not produce any evidence "that Tisdale or any other Continental employee directed, encouraged, or otherwise 'assented to' any assault or battery that may have occurred."[44]

Plaintiffs allege that Wells Fargo recklessly provided the information that led to Plaintiffs' arrest, thereby "procuring" the alleged assault of Plaintiffs. Plaintiffs make a conclusory allegation that the Frisco Police made its tactical decisions based on information Wells Fargo provided to the police. However, Plaintiffs point to no evidence to support this conclusion, nor do they cite to any evidence to show that Wells Fargo engaged in any act to influence the conduct of the Frisco Police other than to make the non-actionable calls described above. Summary judgment should be granted for Wells Fargo.

**E. Defamation**

A claim for defamation consists of three elements:

(1) the defendant published a false statement about the plaintiff; (2) the statement was defamatory concerning the plaintiff; and (3) the defendant acted with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement.[45]

---

[40] *Lewis v. Cont'l Airlines, Inc.*, 80 F. Supp. 2d 686, 695 (S.D. Tex. 1999).
[41] *Id.* at 692.
[42] *Id.*
[43] *Id.* at 696.
[44] *Id.*
[45] *Saudi v. Brieven*, 176 S.W.3d 108, 117-18 (Tex. App.—Houston [1 Dist.] 2004, no pet.) (*citing WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998)).

A defendant can raise a qualified privilege defense to a defamation claim. The availability of a qualified privilege depends on the situation in which the false statement is published.[46] A statement is subject to a qualified privilege when the statement is "actuated by a sense of duty growing out of the occasion, and provided it was not malicious."[47] For example, a statement made to police "identifying someone as a potential suspect in the commission of a criminal offense" is subject to qualified privilege.[48] A qualified privilege may be maintained as long as the statement was made in good faith and was made without malice.[49] Malice is established when the defamatory statement is made with knowledge that the statement is false or with reckless disregard as to the truth or falsity of the statement.[50] "Negligence, failure to investigate the truth or falsity of a statement before publication, and failure to act as a reasonably prudent man have been held insufficient to show malice."[51]

Plaintiffs claim that Wells Fargo's statements to the Frisco Police were defamatory.[52] Because Wells Fargo employees made their statements to the police, their statements are subject to qualified privilege.[53] Therefore, Plaintiffs must produce some evidence that the statements to the Frisco Police were not made in good faith, or were made with malice, in order to meet their summary judgment burden.[54]

In their Response, Plaintiffs argue the incorrect standard. Plaintiffs argue that Wells

---

[46] *Pease v. Bembry*, No. 03-02-00640-CV, 2004 WL 1574243, at *2 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.).
[47] *Cranfill v. Hayden*, 80 S.W. 609, 613 (Tex. 1904).
[48] *Pease*, 2004 WL 1574243, at *2.
[49] *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 626-27 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).
[50] *Id.*
[51] *Id.*
[52] Pls.' Resp. at 30.
[53] *See Marathon Oil Co.*, 682 S.W.2d at 631 (*quoting Zarate v. Cortinas,* 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi 1977, no writ)).
[54] *See id.*

11

Fargo's statements were defamatory *per se*, by relying on *Gray v. HEB Food Store No. 4*.[55] In *Gray*, the court describes different circumstances under which a statement is defamatory *per se*.[56] One example of such is when the statement imputes criminal conduct to an individual.[57] In *Gray*, the plaintiff sued the defendant because of statements made to her while she was checking out at a grocery store.[58] The court held that the statements imputed criminal conduct to Gray, and that there was a genuine issue of material fact as to whether or not the statements were defamatory *per se*.[59] However, *Gray* does not support Plaintiffs' argument in this case, because the statements made in *Gray* were not made to law enforcement officials.[60]

Plaintiffs apparently assert that Wells Fargo acted in bad faith, or with malice, in reporting the situation to the Frisco Police. Plaintiffs' evidence, however, does not establish the requisite actual malice, which is, at the least, a "reckless disregard for the truth,"[61] and which may not be inferred merely from the falsity of a statement.[62] The defendant has the responsibility to "conclusively establish" that the statements made, if protected under a qualified privilege, were made without malice.[63] Once the defendant has established that there was no malice, the plaintiff must produce sufficient evidence to create a genuine issue of material fact.[64]

Pirrello stated in her affidavit that she observed behavior from the Plaintiffs that made her nervous, especially because the vault technician was working on the bank's vault during the time

---

[55] Pls.' Resp. at 30. Plaintiffs cite *Gray v. HEB Food Store No. 4* as 641 S.W.2d 327. However, the correct citation is *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327 (Tex. App.—Corpus Christi 1997, writ denied).
[56] *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied).
[57] *Id.*
[58] *Id.* at 328. Yvette Rodriguez, Assistant Service Manager at HEB, asked Gray, "Ma'am, what are you getting free today?" *Id.* Rodriguez asked this question of Gray three different times while Gray tried to check out, implying criminal conduct on Gray's part. *Id.*
[59] *Id.* at 329.
[60] *Id.* at 328.
[61] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).
[62] *Pease v. Bembry*, No. 03-02-00640-CV, 2004 WL 1574243, at *4 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.).
[63] *Id.* at *3.
[64] *Id.* at *4.

of the alleged events, so the vault's security was compromised.[65] As discussed in the negligence portion, Pirrello's behavior conformed to industry standards. Additionally, she told the police only that there was a *possibility* that a customer might have a gun, not that a customer *in fact* had a gun. Maiwald spoke to the 911 operator and relayed the information to the operator that there was not a robbery in progress and that he did not believe the customer had a gun. It is clear that Maiwald was acting to convey information to the operator as he saw it. Wells Fargo conclusively established that it acted without malice. Plaintiffs have not produced sufficient evidence to raise a genuine issue of material fact as to malice; therefore, summary judgment will be granted.

### F.  Invasion of Privacy

Plaintiffs asserted this claim in their Original Petition,[66] but state their intention to drop this claim in an amended complaint.[67] The claim is not sustainable because Plaintiffs have not articulated actions of Wells Fargo which constitute invasion of privacy, nor have they produced any evidence to substantiate this claim. The claim for invasion of privacy will be dismissed with prejudice.

### G.  Intentional Infliction of Emotional Distress ("IIED")

In order to prove a claim for IIED, the plaintiffs must prove that "(1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe."[68] It is for the court to determine if defendant's conduct was sufficiently extreme and

---

[65] Def.'s App. at 0002-03.
[66] Pls.' Pet. at 14-15.
[67] Pls.' Resp. at 2 n.1.
[68] *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (*citing Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993)).

outrageous to allow the plaintiff to recover.[69] The Texas Supreme Court adopts the Restatement's definition of extreme and outrageous conduct: A party will be liable for IIED "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[70] When a plaintiff claims IIED based on the recklessness standard, severe emotional distress must be the intended consequence or the primary risk of the defendant's conduct.[71]

In *Standard Fruit and Vegetable Co. v. Johnson*, the Texas Supreme Court analyzed the purpose of IIED claims and stated that such a claim cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort.[72] When a plaintiff's claim for IIED is really a claim based on another tort, the plaintiff cannot pursue an IIED cause of action.[73]

The claim fails for several reasons. First, Plaintiffs do not assert an independent basis for the IIED claim. It is factually the same as that for the claims of negligence, defamation, and false imprisonment. Second, the conduct alleged is not so extreme in degree as to exceed all bounds of decency and be intolerable in a civilized community. Plaintiffs refer the Court to Pirrello's deposition, where she was asked what she thought the police would do when she called 911 to report the possibility of a gun in a bank customer's pocket.[74] Pirrello responded, "I would think he would just go ahead—we would go through the steps, and do I know the details of how they are—SWAT the bank down and all that? That, I don't know."[75] This statement shows that

---

[69] *Id.*
[70] *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (*quoting* Restatement (Second) of Torts § 46 (1965)).
[71] *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67-68 (Tex. 1998).
[72] *Id.* at 68.
[73] *Moser v. Roberts*, 185 S.W.3d 912, 915 (Tex. App.—Corpus Christi 2006, no pet.).
[74] Pls.' Resp. at 28.
[75] Pls.' App. at 170.

Pirrello knew that the police might send a SWAT team to the bank, but did not know the details of what would happen. The conduct by Pirrello and Maiwald does not satisfy the requirements of the IIED and summary judgment will be granted on that claim.

*Conclusion*

Wells Fargo's Motion for Summary Judgment is therefore GRANTED as to all of Plaintiffs' claims. Although the events that resulted in the claimed injury to Plaintiffs are highly regrettable, they are not legally actionable. This disposition will result in a judgment dismissing the Defendant and the Third Party Defendant.

**SO ORDERED.**

August 7, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**